# In the United States Court of Federal Claims

No. 20-497C
(Filed: August 20, 2020)
FOR PUBLICATION

|  |  |  |
|---|---|---|
| **FAISAL RAHMAN,** | ) ) ) ) | |
| *Plaintiff,* | ) ) | **Keywords**: Military Pay Act; Motion for Voluntary Remand; RCFC 52.2; *SKF USA Inc. v. United States*; Time Limits for Remand |
| **v.** | ) ) ) | |
| **THE UNITED STATES,** | ) ) | |
| *Defendant.* | ) | |

*Jason E. Perry*, Wellington, Florida, for the plaintiff.

*William S. Rayel,* Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *MAJ Kyle M. Meisner,* U.S. Army Legal Services Agency, Fort Belvoir, Virginia, and *Bernard E. Doyle,* Office of the Chief Counsel, National Guard Bureau, Arlington, Virginia, for the defendant.

## MEMORANDUM OPINION AND ORDER

**HERTLING**, **Judge**

The plaintiff, Faisal Rahman, filed a complaint on April 24, 2020.  At this stage of the case, the Court treats as true all well-pleaded allegations and makes no findings of fact.  For current purposes, only a brief summary of the plaintiff's claim is necessary.

The plaintiff alleges that he entered on active duty with the United States Army on July 24, 2002 and served on active duty until September 24, 2014, when he was transferred to the Alabama Army National Guard.  (ECF 1 at 2-3.)  During his Army service, he alleges he served four combat deployments to Iraq and Afghanistan.  (*Id.* at 3.)

Mr. Rahman was ordered back to active duty from January 16, 2015 through November 1, 2015, in order to train for a new Military Occupational Specialty.  During this period of active duty, Mr. Rahman alleges "he was injured during physical training and [ ] aggravated his existing neck and back injuries."  (*Id.*)  While on active duty in 2015, Mr. Rahman requested and was recommended by his commanding officer for continuation on active duty through the Army's Active Duty Medical Extension program.  The plaintiff was not, however, approved for continuation on active duty and was returned to the Alabama Army National Guard on November 1, 2015.  (*Id.*)  Thereafter, as a member of the Alabama Army

1

National Guard, the plaintiff "continued to have problems with his health and the performance of his military duties and was ultimately referred for a military [Disability Evaluation System] evaluation and processing." (*Id.*)

A Medical Evaluation Board was convened on January 29, 2018 and determined that Mr. Rahman "failed medical retention standard for four conditions, cervical neck strain, degenerative arthritis of the cervical spine, lumbosacral strain, and degenerative arthritis of the lumbar spine." (*Id.* at 3-4.) Mr. Rahman was then referred to a Physical Evaluation Board to adjudicate the impact of these disabilities on his military duties and to produce a rating for the disabilities.

On February 28, 2018, an informal Physical Evaluation Board convened and found the plaintiff "unfit to perform his military duties" due to his disabilities and rated the plaintiff as 40 percent disabled. The plaintiff accepted these findings. The plaintiff was permanently retired from the Army on May 10, 2018. (*Id.* at 4.)

The plaintiff sues under the Tucker Act, 28 U.S.C. § 1491(a)(1), basing his claim on 37 U.S.C. § 204. He seeks the active duty pay that he would have received had he been continued on active duty from November 1, 2015, until he was medically retired on May 10, 2018.

On July 28, 2020, the defendant moved pursuant to Rule 52.2 of the Rules of the Court of Federal Claims ("RCFC") for a voluntary remand of the plaintiff's claim to the Army Board for Correction of Military Records ("ABCMR") and a stay of the case pending the ABCMR's decision. (ECF 8.) The defendant argues that a remand is appropriate in this instance because the defendant "has substantial and legitimate concerns about the correctness of its decision." (*Id.* at 3.) The defendant acknowledges that the applicable regulations, cited by the plaintiff in his complaint, "raise[ ] substantial and legitimate concerns about the correctness of Mr. Rahman's November 2015 release from active duty." (*Id.*) Although the defendant does not confess error in the Army's treatment of the plaintiff, the defendant's brief tiptoes up to that line before stepping back a little in its reply brief. (ECF 12.)

The plaintiff opposes the defendant's request for a remand to the ABCMR and a stay. (ECF 10.) He argues that the defendant misconstrues the relief the plaintiff seeks. He argues further that the defendant has effectively "conceded all the elements . . . necessary to find in favor of Mr. Rahman." (*Id.* at 4.)

"Although there is generally no requirement that a plaintiff exhaust remedies with the applicable Corrections Board before filing suit in the Claims Court, *Heisig v. United States*, 719 F.2d 1153, 1155 (Fed. Cir. 1983), these cases normally still proceed through the Corrections Boards because '[t]ypically, if suit is filed just in the [Claims Court], that court will require resort to a Corrections Board while the matter remains pending in that court.' *Richey v. United States*, 322 F.3d 1317, 1322 (Fed. Cir. 2003)." *Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013).[1]

---

[1] The plaintiff responds to the defendant's citation to *Antonellis* by noting that the case "while mentioning remand as an issue, dealt with the affirmance of the dismissal of the . . . case based on non-justiciability." (ECF 10 at 3.) The plaintiff's effort to avoid the Federal Circuit's discussion is unavailing. The plaintiff may be correct that the

A key factor underlying this general approach of proceeding through a Corrections Board is the principle that "civilian courts are reluctant to second-guess decisions of the military authorities as to promotion, separation, or reassignment." *Id.* at 1332.  As the Federal Circuit has stressed, "the military is entitled to great deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).  While "routine personnel decisions regularly made by the services [ ] are variously held nonjusticiable or beyond the competence of the court to wrestle with[,]" *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988), a judicial remedy may be available "if a statute, regulation, or instruction specifies the particular procedure to be followed in personnel actions, and the plaintiff alleges that the required procedure was not followed." *Antonellis*, 723 F.3d at 1332.

The plaintiff here has alleged that the Army has failed to comply with the procedural requirements that the military has established.  There is, therefore, no dispute over the availability of a judicial remedy in this case.  The immediate issue is whether the Army should be given the opportunity to remedy a potential error in the first instance.

A judge of this court recently had occasion in a Military Pay Act case to elaborate on motions to remand and analyze the governing Federal Circuit decision in *SKF USA, Inc. v. United States,* 254 F.3d 1022 (Fed. Cir. 2001), by canvassing thoroughly the various circumstances in which the government may move for a voluntary remand.[2]  *Keltner v. United States*, 148 Fed. Cl. 552 (2020).  Judge Solomson reviewed the Federal Circuit's discussion in *SKF* of the five positions agencies may take when the courts review their decisions.  Only one of these situations is present in the case at bar, the fourth type identified in *SKF*: "even if there are no intervening events [between an agency's decision and the motion to remand], the agency may request a remand (without confessing error) in order to reconsider its previous position." *SKF,* 254 F.3d at 1029.[3]  In such cases, the decision to allow a voluntary remand is vested in the court's discretion. *Id.*

---

discussion regarding remand to an agency is not part of the *ratio decidendi* of the case, but the Federal Circuit does not write simply to produce more pages in the Federal Reporter.  The Court of Appeals writes to provide guidance to which this court should accord deference.  Litigants before this court need to have substantive grounds for distinguishing away guidance from the Court of Appeals.  Merely noting that the posture on appeal between this case and a Federal Circuit decision is insufficient.  The Court will follow the Federal Circuit's guidance in *Antonellis*.

[2] As he attempted to do with *Antonellis*, the plaintiff attempts to distinguish the Federal Circuit's seminal decision in *SKF* by noting that the case was "a Court of International Trade case with limited applicability to the nature of the issues raised in this case." (ECF 10 at 2.)  The plaintiff's distinction is true, as far as it goes, but also irrelevant.  *SKF* is the governing case, and the Court will abide by its discussion, as elucidated by subsequent cases dealing with motions to remand.

[3] The first two categories "by definition are not voluntary remand situations." *Keltner*, 148 Fed. Cl. at 560.  These first two are instances in which 1) "the agency defends its decision on the grounds articulated by the agency," *SKF*, 254 F.3d at 1028, and 2) "the agency seeks to defend its decision on grounds not previously articulated by the agency." *Id.*  In the third situation, an "agency may seek a remand because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation." *Id.*  "A remand is generally required if the intervening event may affect the validity of the agency action." *Id.*  The fifth category identified in *SKF*, and the one presented in that case, is when "an agency believes its original decision is incorrect on the merits

In cases that fall within *SKF*'s fourth category of agency positions on judicial review of their decisions, the Federal Circuit instructed that "a remand is usually appropriate" when the agency's concern is "substantial and legitimate." *Id.* One reason for allowing remand is to permit the agency "to consider further the governing statute, or the procedures that were followed." *Id.* A motion to remand may, however, "be refused if the agency's request is frivolous or in bad faith." *Id.* Remand should also be denied if it would either serve no useful purpose, *Martinez v. United States*, 333 F.3d 1295, 1310 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1177 (2004), or "unduly prejudice the non-moving party." *Utility Solid Waste Activities Grp. v. Environmental Prot. Agency*, 901 F.3d 414, 431 (D.C. Cir. 2018) (citation omitted).

Judge Solomson went on to limn one of the few decisions rejecting a government motion for a voluntary remand, the D.C. Circuit's decision in *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379 (D.C. Cir. 2017). *Keltner*, 148 Fed. Cl. at 562. The D.C. Circuit, in an opinion by then-Judge Kavanaugh, limited a trial court's discretion to remand a case voluntarily to the agency only to those instances in which "the agency intends to take further action with respect to the *original agency decision on review*." *Limnia*, 857 F.3d at 386 (emphasis in original).

After his thorough review of the case law, Judge Solomson concluded that when "an agency requests a remand without confessing error, the agency must express some intent to reconsider the original agency decision that is the subject of the legal challenge." *Keltner*, 148 Fed. Cl. at 563. Only after making such a finding may a court then exercise its discretion to grant or deny the motion for a voluntary remand. *Id.*[4]

The central holding of *Keltner*, with which this Court agrees, is that government motions for a voluntary remand to an agency for additional consideration should not simply be granted in a perfunctory manner. Rather, such motions should be treated as with any other motion affecting the substantial rights of the plaintiff, by subjecting the government's position to careful analysis to ensure that the motion is properly supported and justified.

In the case at bar, the Court finds as an initial matter that the defendant expressly acknowledges that the plaintiff has "raise[d] substantial and legitimate concerns about the correctness of" the Army's decision to release the plaintiff from active duty. (ECF 8 at 3.) The defendant then admits that while "there may conceivably be a legitimate reason why [the plaintiff] was not retained on active duty . . . such a reason is not apparent from his complaint or his Army Military Human Resources Record." (*Id.* at 4.) The remand is proposed to permit the ABCMR to review the Army's decision in the first instance. The justification proposed by the

---

and wishes to change the result." *Id.* None of these four situations is present in the case at bar, leaving as the only possibility the fourth category identified in *SKF*.

[4] Ultimately, Judge Solomson denied the motion to remand in *Keltner* after he determined that the government had sought "a remand simply so the [Air Force Board for Correction of Military Records] can bolster its reasons for denying [the plaintiff's] claim," and thereby improve the prospect that the court would uphold the administrative decision. 148 Fed. Cl. at 565. That is not the case here; the defendant has provided substantial and legitimate reasons for seeking a remand in this case.

defendant for the voluntary remand satisfies the initial hurdle established by the caselaw, as summarized in *Keltner*.

The Court may thus proceed to exercise its discretion in evaluating the merits of the defendant's motion. A review of Mr. Rahman's claim by the ABCMR would substantially aid in the resolution of this case. The ABCMR might well conclude that the plaintiff's 2015 removal from active duty was in error, for either substantive or procedural reasons, or not. Even if the ABCMR were to conclude that the plaintiff should have been retained on active duty beyond November 1, 2015, there would remain medical questions the ABCMR should resolve in the first instance.

The plaintiff is seeking constructive active duty pay for the period from November 2, 2015, until he was retired on disability on May 10, 2018. "The basic premise of the constructive service doctrine is to 'return successful plaintiffs to the position that they would have occupied "but for" their illegal release from duty.'" *Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (quoting *Dilley v. Alexander*, 627 F.2d 407, 413 (D.C. Cir. 1980)). As the defendant accurately argues in support of its motion to remand, even "if Mr. Rahman had been retained on active duty beyond November 1, 2015 for Disability Evaluation System processing, . . . he may not have been retained on active duty for another *two-and-one-half years*." (ECF 12 at 4). The defendant goes on to outline two alternative approaches to rectifying the plaintiff's situation even if the premise of the plaintiff's claim is correct.

The Court is not prepared to accept at this stage of the proceeding the defendant's characterization of what relief may be proper or whether the defendant's discussion about the scope of the available relief is sensible, but the defendant's argument along these lines suggests that even if the Court were to agree with the plaintiff and find him entitled to relief, the determination of the parameters of that relief would require a remand to the ABCMR to consider these arguments in the first instance. (ECF 12 at 5.) In such a case, a remand at this stage might produce a quicker ultimate decision on the merits, making a remand now a more efficient means of resolving the plaintiff's claim promptly.

A remand will provide the Army an opportunity to review its decision and, if it finds it to have been in error, to correct its own mistake. That approach, consistent with the principle underlying both *Antonellis* and *SKF*, is to be preferred over judicial intervention, which is most appropriate when an agency refuses to correct a substantive or procedural error. Given the substantial deference to be accorded the armed services in their personnel decisions, it is even more appropriate to allow them the opportunity to correct their own mistakes.

Under *SKF*, as explicated by *Keltner* and other subsequent decisions, the defendant's motion is supported by substantial and legitimate concerns. In such cases, "remand is usually appropriate." 254 F.3d at 1029. Accordingly, the Court grants the defendant's motion.

The plaintiff opposes a remand in part because of the time he fears he will lose in obtaining the monetary relief he is seeking and needs, because he "has been without pay for five years." (ECF 10 at 5.) The plaintiff points to delays by the ABCMR in adjudicating a case on

which the defendant relies in urging the Court to grant its motion. (*Id.* (citing *Wolfing v. United States*, 144 Fed. Cl. 516 (2019)).)

The Court is sympathetic to the plaintiff's concern. Recently, another judge of this court confronted a similar situation. In *Yang v. United States*, ___ Fed. Cl. ___, 2020 WL 4198011 (July 8, 2020), Judge Lettow granted the government's motion for a voluntary remand but found that the plaintiff's interest in avoiding unnecessary delay had merit. *Id.* at ___, 2020 WL 4198011 at *3.

The Court finds that Mr. Rahman's concern with the prejudice he will suffer from the delay attending a remand is justified. As Judge Lettow noted in *Yang*, RCFC 52.2 authorizes the court to "specify procedural limitations for a remand." *Id.* The Court will rely on that authority to seek to expedite the time spent on the remand, but the plaintiff will need to cooperate with the expedited schedule.

The Court directs the plaintiff to apply to the ABCMR for relief within two weeks of this decision. The Court will allow the ABCMR 90 days (adjusted for the Thanksgiving holiday) following the plaintiff's application for relief to render an initial decision on the issue of whether the Army erred in removing the plaintiff from active duty on November 1, 2015. If the ABCMR determines at that first step that no error was made or that the plaintiff suffered no injustice, the plaintiff will be able to return to this Court promptly. If the ABCMR finds, however, that the Army erred in removing the plaintiff from active duty when it did, the ABCMR may have an additional 90 days to determine the appropriate relief due to the plaintiff and any other issues the plaintiff presents. This two-prong approach will allow a relatively quick initial decision susceptible to judicial review, while also allowing for a more thorough treatment of the plaintiff's medical records if the ABCMR determines in the first instance that the Army committed substantive or procedural error or the plaintiff suffered an injustice.

In the event further proceedings are required in this Court following the ABCMR's decision, the Court will set an expedited briefing schedule.

The defendant's motion to remand pursuant to RCFC 52.2 (ECF 8) is **GRANTED**.

The plaintiff's claim is **REMANDED** to the Secretary of the Army, who is directed to submit the matter to the ABCMR.

The plaintiff shall apply to the ABCMR by filing a DD Form 149 with the ABCMR on or before **September 4, 2020**.

The ABCMR shall determine by **November 30, 2020**, whether the Army committed an error or injustice in releasing the plaintiff from active duty on November 1, 2015, rather than continuing him on active duty. In the event the ABCMR determines that no error or injustice was committed by the Army in releasing the plaintiff from active duty on November 1, 2015, rather than continuing him on active duty, the defendant shall file by **December 14, 2020**, a status report informing the Court of that determination.

In the event the ABCMR determines that an error or injustice was committed by the Army in releasing the plaintiff from active duty on November 1, 2015, rather than continuing him on active duty, the defendant shall file a status report by **December 14, 2020**, notifying the Court of that determination.  If it makes such a determination, the ABCMR shall determine the appropriate relief due to the plaintiff and address any other issues the plaintiff presents in his application and consider all relevant evidence, including any new evidence submitted by the plaintiff in support of his application.  The ABCMR shall render its decision by **February 22, 2021**, with respect to the relief due to the plaintiff and on any other issue presented.  The defendant shall file a status report informing the Court of the ultimate determination of the ABCMR by **March 8, 2021**.

Any extension of these deadlines will be granted only for unusually compelling reasons, unless the plaintiff consents to the extension.

The case is hereby **STAYED** until further order of the Court.  No answer will be required during the pendency of the stay.  The requirement of RCFC 52.2(b)(1)(D) is hereby waived, and neither party shall be required to file a status report, other than those required by the preceding provisions of this Order, during the pendency of the stay.

A copy of this Order shall be served on the Secretary of the Army at:

> Office of the Secretary of the Army
> 101 Army Pentagon
> Washington DC  20310-0101

A copy of this Order shall also be served on the ABCMR at:

> Army Review Boards Agency
> 251 10th Street South, Suite 385
> Arlington VA  22202-3531

It is so **ORDERED.**

s/Richard A. Hertling
**Richard A. Hertling**
**Judge**